————o————

5532.

(Court of Appeal, Parish of Orleans.)

## MRS. ANNA MARIA AMRHEIM vs. BERT CHAMPION, ET AL.

1. No suit affecting the title to property, or even any link in the chain thereof, can be maintained, unless the last registered holder of the title be a party to the suit.

2. In a jactitation suit, a plaintiff or intervenor alleging slander of title, must prove actual possession in order to maintain the action.

3. Where the law provides a particular form of action for the redress of a given wrong, the injured person must resort to that remedy alone, and cannot appeal to the equitable powers of the Court, which may be exercised only "where there is no express law."

4. There is a wide distinction between one who merely clouds the title of another by setting up and recording an adverse claim and title to the property, and one who attempts to *destroy* the title of another by *"cutting out of the public records every evidence thereof."*

Appeal from the Civil District Court, Divisions "C" and "B."

Danziger & Dreyfous, for plaintiff and appellee.

—246—

Foster, Milling, Brian & Saal, for defendant and appellant.

L. A. Ducros, attorney.

ST. PAUL, J.—This is an action to annul for alleged fraud a judgment confirming a tax title, coupled with a demand for damages for slander of title against Bert Champion, the plaintiff in said confirmation suit, his attorney therein, and John Albion Saxton, an associate interested with him in the land.

From a judgment against them in solido for the sum of $1,000.00 damages, and annulling the judgment of confirmation so far as it affects plaintiff's property, Champion and Saxton appeal.

It may be said at the outset that plaintiff holds a clear and recorded title to the property out of which this controversy grows, that she has regularly paid all the taxes thereon, and was no party to the suit for confirmation.

Hence any sale of her property for taxes would be void, and any judgment of confirmation not rendered contradictorily with her, the owner of record, is and remains an absolute nullity in so far as it relates to her property. No such judgment can prejudice in any manner her title to the property, or effect in the slightest degree her right to gain possession thereof. The tax title does not cover her property, and the judgment of confirmation is binding on no one except the parties thereto, since it was not obtained contradictorily with the owner of the land described therein. (Act 101 of 1898.)

The most that may be said of the judgment is that it operates as a slander of plaintiff's title, by casting there-

on the mere shadow of a cloud, which plaintiff might in a proper proceeding be entitled to have removed, and for which under certain conditions she might be entitled to an award as damages.

But no such proceeding is before us, and no such condition here prevails. For it appeared on the trial of this case that plaintiff though setting up title and possession is not in actual possession of the property and had not been for more than a year before this suit was filed; that defendants presently claim no title to the property and are not in possession thereof, having sold and delivered the same to the Nylka Land Company before the institution of this suit; and the Nylka Land Company is not a party to this suit.

And since that judgment, however worthless it may be, yet forms a link in the title by which the Nylka Land Company claims and holds the land, this action so far as it seeks to annul that judgment, cannot be maintained; for no suit affecting the title to property or even any link in the chain thereof, can be maintained, unless the last registered holder of the title be a party to the suit.

The latest expression of the Supreme Court on that subject is found in **Copeland vs. Carey et al., 130 La., (57 So. Rep. 798, Pamphlet No. 8).**

That was an action to annul for alleged fraud a sale by one of the defendants to the other, but the latter had in the meanwhile sold the property to a third person, who was not made a party to the suit.

An exception of ''no cause of action'' was leveled at the petition and the Court said: ''In the present suit the last purchaser was not made a party * * * but it is very evident he cannot be ignored in the matter of title * * *. Whether the title is good or bad it is the latter's title which he can insist upon holding until

legally divested." And the exception of no cause of action was held to be good, although the Court in order to put an end to the litigation proceeded to dispose of the case on the merits, the last purchaser having in the meanwhile voluntarily intervened for the appeal. In the case before us the Nylka Land Company has not intervened, and we are therefore powerless to deal with the title under which it claims, or with any link in the chain thereof.

Nor can this suit be maintained as a jactitation suit, or action for slander of title. Actual possession of the property in the plaintiff is an essential element of such a suit.

The very last expression of the Supreme Court on that subject is to be found in **Labarre vs. Burton-Swartz Co., 130 La., (56 So. Rep., 655, Pamphlet No. 7)**, wherein the syllabus prepared by the organ of the Court, and fully borne out by the opinion itself, reads as follows:

> "In a jactitation suit, a plaintiff or intervenor alleging slander of title, must prove actual possession in order to maintain the action."

An effort is made to liken this suit to the case of **Lacroix v. Villio, 123 La. 459,** but the two cases are not parallel. In that case one of the defendants was the holder of the last registered title and hence the Court was clearly competent to deal with matters affecting that title; and no third person was in possession of the property. But in this case the last holder of the registered title is not a party, and is and has been in possession for more than a year; from which possession it can be ousted only by the action prescribed by the Code of Practice, to-wit, a petitory action, coupled perhaps with a claim for rents and revenues, if want of good faith can be shown.

Again in **Lacroix vs. Villio,** one of the defendants (that one against whom alone the Court allowed any substantial damages) had done more than merely slander plaintiff's title; he had **"cut out of the public records every evidence of plaintiff's title."**

The action was first maintained as one for slander of title. On rehearing however, the Court did not adhere strictly to a matter of form, but put its decision upon the ground that in view of Articles 21 and 2315 of the Civil Code, an owner of property even though not in possession, ought not to be refused relief against a person, also not in possession, who had inflicted injury upon him by **"destroying the recorded evidence of his title and recording a fraudulent adverse title."**

And the Court reached this conclusion because it saw that a great wrong had been committed for which none of the ordinary actions provided or recognized by law afforded any adequate remedy at that time. Plaintiff in that case could bring neither the petitory nor possessory action, which may be brought only against one who is in actual possession; nor could she bring an action for slander of title, since she herself was not in actual possession; and at the time the suit was brought the law authorizing the "action to establish title," had not yet been passed. **(Act 38 of 1908.)**

But in the case before us there is a claimant in actual possession of the property under a recorded title, against whom the petitory action would lie. Plaintiff therefore has an adequate remedy given her by law, and Article 21 of the Civil Code has no application, since Courts are authorized to proceed under that article only **"where there is no express law."** In this case there is express law. **C. P. 5, 13, 43.**

Where the law provides a particular form of action for

the redress of a given wrong, the injured person must resort to that remedy alone, and cannot appeal to the equitable powers of the Court, which may be exercised only "where there is no express law." **C. C. 21.**

Equity (whether natural or applied as a recognized system) is but "the hand maid of the law," and hence always refuses to grant relief when there is an adequate remedy provided by law. The maxim **"Via trita, via tuta,"** is one which Courts must bear in mind; plaintiff has lost possession of her property, and the law points out the manner in which she must recover it; she must adopt that method and not some other course of her own choosing, leading perhaps no one knows where, for every decided case is precedent for another.

But in any event we draw a wide distinction between one who merely clouds the title of another by setting up and recording an adverse claim and title to the property, even though fraudulent, and one who attempts to **destroy** the title of another by **"cutting out of the public records every evidence thereof."**

The latter may indeed inflict real and irreparable injury on the owner by depriving him not only of the means by which to vindicate his right but even of all knowledge that he has any right. On the other hand, the injury inflicted by the former is more conventional than real, being as we know, a fiction derived from the Spanish Law in order to unfetter estates and clear up titles where there are conflicting claims.

Hence nominal damages only are awarded in such cases, unless actual damages be shown; and no damages whatever are shown in this case. Defendants are not charged with having done anything whatever to destroy the evidences of plaintiff's title, which stands to-day upon the public records as clear, as unimpeachable, and as

readily traceable as it ever stood; and there is no pretense that plaintiff has suffered any pecuniary loss whatever by reason of the registry complained of, unless it be for attorney's fees incurred in a suit which, in our opinion, cannot be maintained; and attorney's fees would not be recoverable even if the suit could be maintained.

We repeat, however, that damages for alleged slander of title cannot be recovered unless the plaintiff be in actual possession of the property. Such is the last expression of the Supreme Court (**Labarre vs. Burton-Swartz Co., 130 La.**) and must prevail notwithstanding anything that might appear to the contrary in the **Lacroix vs. Villio case**; although, as we have said, we draw a wide distinction between that case and this.

We therefore think that plaintiff's demand must be rejected.

Up to this point the Court is unanimous. But one of the Judges, the writer of this opinion, thinks that this is a proper case in which to exercise the power vested in us by Act 229 of 1910, of taxing costs "against any party to the suit as in our judgment may be deemed equitable," since defendants failed to set forth in their answer the essential fact that they had transferred the property before the filing of the suit, to a third person not a party thereto; thereby permitting plaintiff and the Court to continue with this litigation, by which nothing could be accomplished and thus casting, on plaintiff double costs and double expenses, by reason of the new suit which she will have to bring against the Nylka Land Company.

But a majority of the Court think that since, in matters affecting the title to real estate, knowledge is not equivalent to registry, the converse of that is true and registry is equivalent to knowledge. So that they are of opinion that, as the transfer by defendants to the

— 252 —

Nylka Land Company was duly registered, plaintiff must be considered as having actual knowledge thereof from the time of such registry, and that it was her fault and not the fault of defendants that she chose to bring her suit in the form in which she did bring it.

It is therefore ordered that the judgment appealed from be reversed, and it is now ordered that plaintiff's suit be dismissed as against the appellants Bert Champion and John Albion Saxton; without prejudice to her right to proceed in any wise for the recovery of her said property from any person whomsoever, detaining same.

It is further ordered that plaintiff and appellee pay all the costs of these proceedings in both Courts.

April 17th, 1912.

Rehearing refused May 27th, 1912.

June 20th, 1912, Writ granted by Supreme Court.